IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SARAH MOZINGO MARTIN AND MARY S. MOZINGO,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:13-CV-3953-L** |
| **TREND PERSONNEL SERVICES AND DAN W. BOBST,** | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure following a bench trial on Plaintiffs' breach of fiduciary duty claim under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. ("ERISA"), which was tried to the court.[1]  For the reasons that follow, the court **finds** and **concludes** that

---

[1] In preparing this memorandum opinion and order, the court carefully considered the trial testimony and exhibits and applied the standard in this circuit for findings of fact and conclusions of law. *See Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing standard for findings and conclusions under Rule 52). In accordance with that standard, the court has not set out its findings and conclusions in "punctilious detail" or "slavishly traced the claims issue by issue and witness by witness, or indulged in exegetics, parsing or declaiming every fact and each nuance and hypothesis." *See id.* The court instead has limited its discussion to those legal and factual issues that form the basis for its decision. *Id.* The facts contained herein are either undisputed or the court has made the finding based on the credibility or believability of each witness. In doing so, the court considered all of the circumstances under which the witness testified, including: the relationship of the witness to Plaintiffs or Defendants; the interest, if any, the witness has in the outcome of the case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. When necessary, the court comments on the credibility of a witness or the weight to be given to a witness's testimony. Where appropriate, any finding of fact herein that should more appropriately be regarded as a conclusion of law shall be deemed as such, and vice versa.

Plaintiffs are not entitled to recover on their breach of fiduciary duty claim under ERISA against Defendants. The court, therefore, will enter judgment in favor of Defendants on Plaintiffs' breach of fiduciary duty claim under ERISA in accordance with this memorandum opinion.[2] Defendants are also entitled to judgment on Plaintiffs' equitable estoppel claim under ERISA, which the court concludes, for the reasons herein explained, was waived by Plaintiffs.

**I.      Findings of Fact and Procedural Background**

Plaintiffs Sarah Mozingo Martin ("Sarah Mozingo") and Mary S. Mozingo ("Mary Mozingo") (collectively, "Plaintiffs") are the primary and contingent beneficiaries under a $250,000 life insurance policy under which decedent Sam C. Mozingo ("Sam Mozingo") was the insured. The insurance policy was purchased in 2003 by Trend Personnel Services ("Trend Personnel") during Sam Mozingo's employment with Trend Personnel. Sam Mozingo began working for Trend Personnel in July 2000 and voluntarily left the company in October 2007. Trend Personnel purchased this and other life insurance policies from Penn Mutual Life Insurance Company ("Penn Mutual") for a small number of its employees in 2003 pursuant to Key Employee Restricted Bonus Agreements executed between Trend Personnel and its employees. The two-page Key Employee Restricted Bonus Agreement ("Bonus Agreement") signed by Sam Mozingo, which was prepared by an insurance agent, states in full as follows:

---

[2] Plaintiffs also asserted an equitable estoppel claim under ERISA in their Complaint, but, for the reasons herein explained, the court concludes that this claim was waived and will be dismissed with prejudice.

KEY EMPLOYEE
RESTRICTED BONUS AGREEMENT

AGREEMENT made and entered into this 8th day of May, 2003 by and between Trend Personnel Services, Inc., a corporation organized and existing under the laws of the State of Texas, herein called the "COMPANY", and Sam Mozingo, herein called the "EMPLOYEE".

WHEREAS the EMPLOYEE is employed by the COMPANY and renders valuable services to the COMPANY; and,

WHEREAS the COMPANY intends and desires to reward the EMPLOYEE for services rendered and provide an incentive for continued compensation through a life insurance policy plan;

NOW THEREFORE, in consideration of the employment services of the EMPLOYEE and the mutual promises herein contained, the COMPANY and the EMPLOYEE hereby covenant and agree as follows:

1. The EMPLOYEE is the applicant and insured of life insurance policy #8-137-541 issued by Penn Mutual Life Insurance Company with the death benefit face amount of $250,000. The EMPLOYEE shall possess and exercise all ownership rights in and to such life insurance policy, subject only to the terms and conditions of the agreement. COMPANY will administer and hold all policies for the duration of employment.

2. The premium payable with respect to such life insurance policy is $1,748.00 per year, payable on or before May 8th of each year. The COMPANY hereby covenants and agrees to timely pay said premium(s) when due while the EMPLOYEE is employed by the COMPANY, and to furnish the EMPLOYEE with proof of payment on request. However the COMPANY'S obligation to pay each premium shall be contingent upon the EMPLOYEE timely furnishing to the COMPANY, upon the COMPANY'S request, a statement of policy status compliance with the restrictions of this agreement. Furthermore, the COMPANY shall not be obligated to pay any policy premium(s) which become due and payable on or after the date the EMPLOYEE terminates employment with the COMPANY, regardless of the reason for such termination of employment.

3. All policy premiums paid by the COMPANY pursuant to this agreement shall be in consideration for the employment services of the EMPLOYEE, and therefore shall be considered and accounted for as additional reasonable compensation for all purposes of federal, state, and local law.

4. With respect to the cumulative premiums paid for by the COMPANY for said life insurance policy, the EMPLOYEE and the COMPANY covenant and agree that the COMPANY shall be reimbursed according to the following schedule:

| END OF POLICY YEAR | COMPANY'S PERCENTAGE REIMBURSEMENT OF CUMULATIVE PREMIUMS |
| --- | --- |
| Year 1 thru 7 | 100% Reimbursed |
| Year 8 and after | 0% Reimbursed |

If the EMPLOYEE terminated employment with the COMPANY prior to the end of the seventh policy year for any reason other than the EMPLOYEE'S death, or if the policy is surrendered or otherwise terminated prior to the end of the seventh year[,] [t]he COMPANY'S reimbursement shall be an amount equal to the percentage of the COMPANY'S cumulative premiums paid from the foregoing schedule; and said amount shall be payable to the COMPANY in full in cash within thirty (30) days after termination of employment or termination of the policy. The EMPLOYEE is under no obligation to surrender the life insurance policy to reimburse the COMPANY.

5. Due to the sole payment for the life insurance of the EMPLOYEE by the COMPANY, and loss of revenue, in the event of the death of the EMPLOYEE before the age of 65, the COMPANY is the beneficiary of 50% of the value of the policy. If the EMPLOYEE is not employed by the COMPANY at the time of death, COMPANY is entitled to ALL premiums paid by COMPANY up to time of EMPLOYEE termination.

6. No insurance company which issues a policy pursuant to this agreement shall be deemed a party hereto, nor shall any such company have any responsibility or liability with respect to the interpretation or enforcement of this agreement. The sole obligation shall be the performance of its contractual obligations as specified in the terms of such policy, and full performance hereof shall completely

>     discharge the insurance from any further liability or obligations hereunder.
>
> 7.  This agreement may be amended in whole or in part, or terminated, by the COMPANY at any time at the COMPANY'S sole discretion.
>
> 8.  This agreement shall be construed under and in all respects governed by the laws of the State of Texas. Further, EMPLOYEE and COMPANY both stipulate and agree that Rockwall County, Texas is exclusively where venue will lie for any dispute relating to or arising out of this agreement.
>
> IN WITNESS WHEREOF, the undersigned parties have executed this agreement on the day and year first above written.

Pls.' Ex. 2. The Bonus Agreement was signed by Dan W. Bobst ("Bobst"), Trend Personnel's President and CEO, on behalf of the COMPANY and Sam Mozingo as EMPLOYEE and witnessed by Shonda Wigginton ("Wigginton"), who was also employed by Trend Personnel at the time.

Sam Mozingo voluntarily left Trend Personnel in October 2007. In December 2008, Sam Mozingo was diagnosed with stage four throat cancer. Between May 2009 and August 2009, Sam Mozingo and his attorney e-mailed Bobst about the life insurance policy. Bobst responded that the life insurance policy was not a "benefit," and he had no obligation to transfer the policy. Bobst, nevertheless, agreed to transfer the policy to Sam Mozingo, and told Mozingo's attorney that he had Trend Personnel staff working on it.

On August 28, 2009, the insurance policy was transferred to Sam Mozingo's name. In conjunction with the change of ownership, Sam Mozingo completed a Penn Mutual form in which he designated his sister Sarah Mozingo as the primary beneficiary under the policy and his mother Mary Mozingo as the contingent beneficiary. It is undisputed that the policy lapsed due to lack of funding approximately six weeks after it was transferred to Sam Mozingo's name. Sam Mozingo

received notice of the policy lapse from Penn Mutual via a letter dated October 12, 2009. Sam Mozingo died September 10, 2010.

On December 14, 2010, Plaintiffs filed a lawsuit in the United States District Court for the District of Kansas alleging that Trend Personnel and Bobst (collectively, "Defendants") failed to pay life insurance benefits and breached their fiduciary duty in violation of ERISA. In that proceeding,

> Plaintiffs provided the district court with a bonus agreement, which set forth the terms of the life insurance plan. Each party agreed the bonus agreement was not an ERISA plan document. Plaintiffs, however, asserted a formal ERISA plan may exist, but they would need discovery to find it. Consistent with the parties' position, the district court decided that the bonus agreement is not an ERISA plan document. Applying a forum selection clause contained in the bonus agreement, the district court dismissed the action for improper venue without allowing further discovery.

*Mozingo v. Trend Personnel Servs.*, 504 F. App'x 753, 754 (10th Cir. 2012). On appeal to the Tenth Circuit Court of Appeals, Plaintiffs for the first time contended that the Bonus Agreement is an ERISA plan document, and that the district court prematurely dismissed the action pursuant to the forum selection clause, even though a formal ERISA plan may exist. *Id.* The Tenth Circuit affirmed the decision of the District of Kansas, concluding that Plaintiffs waived their argument that they could establish through additional discovery that the Bonus Agreement was an employee welfare benefit plan that was not subject to transfer under the forum selection clause, and that Plaintiffs failed to preserve their argument regarding additional discovery of a formal ERISA plan document. *Id.* at 755-57.

Plaintiffs then filed this lawsuit in the Dallas Division of the United States District Court for the Northern District of Texas, contending that the Bonus Agreement is an employee welfare benefit plan under ERISA; that Defendants owed a fiduciary duty to Sam Mozingo as the plan sponsor or

plan administrator; and that Defendants breached their fiduciary duty and made material misrepresentations to Sam Mozingo that justify the application of equitable estoppel to bar Defendants from denying life insurance benefits.[3] Plaintiffs contend that Defendants breached their fiduciary duty imposed on them under 29 U.S.C. § 1104(a)(1)(B) by failing: (1) to pay the annual premium on the life insurance policy in May 2007; (2) to keep Sam Mozingo informed of the status of the policy after he left Trend Personnel in October 2007; and (3) to transfer promptly the policy to Sam Mozingo after he left Trend Personnel in October 2007 and, in particular, after he requested in May 2009 that the policy be transferred to him.[4] In their Complaint, Plaintiffs request $250,000

---

[3] No reference was made to equitable estoppel in the original or amended Joint Pretrial Order or Plaintiffs' proposed findings of fact and conclusions of law. A final pretrial order, unless amended, supersedes all prior pleadings and controls the subsequent course of the action. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007); *see* Fed. R. Civ. P. 16(d). As a result, "[c]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim." *Id.* (citation omitted); *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 342 (5th Cir. 1988) (concluding that claims or issues omitted from the pretrial order are waived). The court, therefore, concludes that Plaintiffs waived any right to recover under an equitable estoppel theory and will dismiss with prejudice this claim.

[4] In their proposed findings of fact and conclusions of law, Plaintiffs assert for the first time that Defendants also breached their fiduciary duty by: (1) failing to ensure that Penn Mutual followed the Bonus Agreement's terms that provide that the employee, not Trend Personnel, is the owner of the life insurance policy; (2) failing to provide Sam Mozingo with a change of ownership form within thirty days after he requested that the life insurance policy be transferred to his name; and (3) failing to respond promptly to the request by Sam Mozingo's attorney for a copy of the policy and Sam Mozingo's request for information regarding the status of the life insurance policy. According to Plaintiffs' proposed findings of fact and conclusions of law, the second and third of these grounds is based on 29 U.S.C. § 1132(c)(1)(B), which is ERISA's statutory penalty provision for disclosure violations. Under section 1132(c)(1)(B), courts have discretion to find a plan administrator personally liable and impose a statutory penalty of $100 per day from the date that a plan administrator fails or refuses to provide information that he or she is required by ERISA to furnish within 30 days of a written request by a plan participant for such information. 29 U.S.C. § 1132(c)(1). The Fifth Circuit has held that, although the statutory language in section 1132(c) is broad, it must be strictly construed because it is a penalty provision. *Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483, 489 (5th Cir. 2011).

Here, there is no evidence that Sam Mozingo requested in writing that Bobst or Trend Personnel furnish him with a transfer form or similar paperwork. Even if the court focuses on the substance of the relief sought and the allegations in Plaintiffs' Complaint and assumes that Sam Mozingo's request "to get that Life Insurance Policy from you" (Pls.' Ex. 5) and the subsequent requests for other information qualify as written requests for information under section 1132(c)(1)(B), any such claim falls outside the scope of Plaintiffs' pleadings. *See Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013) (explaining that relief sought should be determined by substance, not the labels used in a party's pleadings). This is so because even a liberal construction of Plaintiffs' pleadings leads the court to conclude that their

**Memorandum Opinion and Order - Page 7**

in damages, which represents the life insurance benefits under the life insurance policy, in addition to attorney's fees and costs of suit. Plaintiffs assert that the $250,000 in requested damages constitute "make-whole relief in the form of [a] surcharge, as authorized by 29 U.S.C. §§ 1132(a)(2) and/or 1132(a)(3)." Pls.' Compl. 8. In the Amended Pretrial Order, Plaintiffs indicate that they are only seeking relief under section 1132(a)(3) of ERISA. Accordingly, the court's findings of fact and conclusions of law only address whether Plaintiffs are entitled to relief under section 1132(a)(3) of ERISA for Defendants' alleged breaches of fiduciary duty under 29 U.S.C. § 1104(a)(1)(B). *See Morris*, 853 F.2d at 342.

Defendants moved to dismiss this lawsuit under Federal Rule of Civil Procedure 12(b)(1) on the grounds that the court lacked subject matter jurisdiction over the case because the District of Kansas and Tenth Circuit Court of Appeals both found as a matter of law that the Bonus Agreement was not an ERISA plan document. Defendants urged the court to apply collateral estoppel and dismiss this lawsuit. Plaintiffs responded that they did not concede, at least on appeal, that the Bonus Agreement is not a plan governed by ERISA, and that under Fifth Circuit precedent, the agreement is, indeed, a plan document. The court determined that it had federal question jurisdiction

---

request for "make-whole" damages in the amount of $250,000 or the value of the life insurance policy under the surcharge doctrine and section 1132(a)(3), which allows recovery by a plan participant of "other appropriate equitable relief," does not encompass Plaintiffs' new assertion that they are also entitled to recover damages under section 1132(c) in the form of a statutory penalty for Defendants' alleged failure to provide certain requested information. Not only are the damages sought under the two theories and statutory sections different, but the factual bases for such claims are different. As Plaintiffs' new contentions and request for statutory damages under section 1132(c)(1)(B) were not included in their pleadings or the Amended Pretrial Order, the court does not consider them. Any consideration by the court of Plaintiffs' newly asserted claim and request for statutory damages under section 1132(c)(1)(B) would be patently unfair to Defendants. Moreover, the court previously denied Defendants' request to amend their answer on the eve of trial to include a statute of limitations defense because Plaintiffs contended, and the court ultimately agreed, that such a late pretrial pleading amendment would unfairly prejudice Plaintiffs. Out of fairness to Defendants, the court sees no reason to apply a different standard to Plaintiffs' posttrial assertion of a new claim and request for statutory damages under section 1132(c)(1)(B).

over Plaintiffs' ERISA claims and denied Defendants' Rule 12(b)(1) motion after determining that Defendants had not established that Plaintiffs were collaterally estopped from bringing a claim under ERISA in this court because Plaintiffs' ERISA claims were not previously adjudicated by the District of Kansas, actually litigated, or necessary to the final judgment of that court.

A bench trial of Plaintiffs' fiduciary duty claim under section 1132(a)(3) of ERISA was conducted on March 15, 2015. The court heard testimony during the trial from Bobst, Wigginton, and Mary Mozingo. Plaintiffs' Exhibit Nos. 1-8, 10-15, and Defendants' Exhibit Nos. 1-7 were admitted during the course of the trial.[5] Defendants objected to Plaintiffs' Exhibit Nos. 9 and 16. The court carried the objections to these exhibits without ruling on them and allowed the presentation of evidence pertaining to these exhibits subject to Defendants' objections. In their pretrial objections to Plaintiffs' Exhibit Nos. 9 and 16, Defendants contended that: "The documents [are] unsupported hearsay without exception and do[] not have a sponsoring witness to support the authenticity or admissibility. Defs.' Obj. 1 (Doc. 40).

To the extent that Defendants objected to these or other exhibits at trial on grounds not raised in the pretrial objections, the court concluded that, pursuant to Federal Rule of Civil Procedure 26(a)(3)(B), such objections were waived, except for objections made based on relevancy or under

---

[5] Defendants objected during the trial to Plaintiffs' Exhibit No. 10 but withdrew the objection. Defendants also objected before and during the trial to Plaintiffs' Exhibit No. 15 on hearsay grounds and contended that the document was not a business record because Wigginton was not the custodian of records for Trend Personnel. Defendants' objection on this ground to Plaintiffs' Exhibit No. 15 was overruled. To expedite the bench trial, some objections to exhibits were ruled on at the time the objections were made, while other objections were taken under advisement. The court explained that any outstanding objections would be addressed, as necessary, in the court's findings of fact and conclusions of law. Specifically, the court explained that if there was an objection to a particular exhibit and the exhibit was discussed in the court's opinion, this meant that the court overruled the objection. On the other hand, if an objection was not specifically addressed in the court's findings and conclusions, this meant that the court either sustained the objection or concluded that the exhibit was not necessary for its findings of fact and conclusions of law. The same is true with respect to any objections to witness testimony that were not ruled on during the course of the trial.

Federal Rules of Evidence 402 and 403, unless Defendants could show good cause for the objection not being made prior to trial.[6] After Plaintiffs rested their case in chief, Defendants moved for judgment pursuant to Federal Rule of Civil Procedure 52(c),[7] which was carried by the court. As the court's findings of fact and conclusions of law regarding Plaintiffs' claims are set forth in this memorandum opinion and order, the court **denies as moot** Defendants' Rule 52(c) motion. On September 10, 2015, the parties filed their proposed findings of fact and conclusions of law.[8] The court heard closing arguments on October 9, 2015.

## II.     Conclusions of Law

Defendants contend that Plaintiffs' fiduciary duty claim under ERISA fails because: (1) as a contingent beneficiary under Sam Mozingo's life insurance policy, Mary Mozingo lacks standing under ERISA; and (2) Defendants owed no fiduciary duty to Sam Mozingo under ERISA because the Bonus Agreement is not an ERISA plan. Defendants further assert that, even if the Bonus Agreement qualifies as an ERISA plan, Defendants cannot be liable for any alleged breaches of fiduciary duty under ERISA based on the Bonus Agreement because: (1) the Bonus Agreement terminated automatically and Trend Personnel was no longer required under the agreement to continue making premium payments after Sam Mozingo's employment terminated in 2007; (2) Trend Personnel discontinued the Bonus Agreement program in 2008; and (3) Trend Personnel was

---

[6] The court admitted Plaintiffs' Exhibit No. 14 over Defendants' trial objection after concluding that Defendants waived all objections to Plaintiffs' Exhibit No. 14 that were not raised pretrial.

[7] Under Rule 52(c), the court may enter a judgment on partial findings against a party who has been fully heard during a nonjury trial if the court finds against the party on the issue.

[8] The court refers herein, when citing to the parties' respective proposed findings of fact and conclusions of law, as "Pls.' Br." and "Defs.' Br."

**Memorandum Opinion and Order - Page 10**

not required under the Bonus Agreement to transfer ownership of the life insurance policy to Sam Mozingo.

### A. Mary Mozingo's Standing to Sue as a Beneficiary under ERISA

A claim under section 1132 may be brought only by an ERISA plan participant, beneficiary, fiduciary, or by the Secretary of Labor. 29 U.S.C. § 1132. Plaintiffs brought this action as ERISA plan beneficiaries. ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, *who is or may become entitled to a benefit thereunder*." 29 U.S.C. § 1002(8) (emphasis added). Because ERISA beneficiaries include persons who may become entitled to a benefit under an ERISA plan, and Mary Mozingo was listed as a contingent beneficiary under Sam Mozingo's life insurance policy and may have become entitled to benefits under the policy if anything happened to primary beneficiary Sarah Mozingo, the court concludes that Mary Mozingo had standing to sue under ERISA when this action was initiated. Plaintiffs' breach of fiduciary claim under ERISA, however, fails for other reasons because the Bonus Agreement does not qualify as an ERISA employee welfare benefit plan.

### B. Whether the Bonus Agreement is an ERISA Plan

A particular plan qualifies as an employee welfare benefit plan if a plan: "(1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'—establishment or maintenance by an employer intending to benefit employees." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). If the plan in question fails to satisfy any of these requirements, it does not qualify as an ERISA plan. *Id.* In this case, the parties only dispute whether the Bonus Agreement satisfies the third requirement. The court, therefore, focuses its analysis on this requirement.

**Memorandum Opinion and Order - Page 11**

Plaintiffs contend that this requirement is met because:

> The Bonus Agreement provides that Trend would pay the life insurance premiums while the employee is employed, and also "administer and hold all policies for the duration of employment." (Finding of Facts at Nos. 7, 8) Thus, the Bonus Agreement is "not a 'bare purchase' of insurance so as to be beyond ERISA's purview." *McNeill*, 977 F. Supp. at 430. In addition, the Bonus Agreement expressly states that "the COMPANY intends and desires to reward the EMPLOYEE for services rendered, and provide an incentive for continued compensation through a life insurance policy plan." (Finding of Facts at No. 6) Likewise, Mr. Bobst testified that Trend "was looking for something to help out the employees." (Finding of Facts at No. 4) These facts clearly show that Trend had an "intent to provide its employees with a welfare benefit program through the purchase and maintenance of [an] . . . insurance policy." *McNeill*, 977 F. Supp. at 430.

Pls.' Br. 22-23. Plaintiffs also rely on *Questech, Inc. v. Harford Accident and Indemnity Company*, 713 F. Supp. 956 (E.D. Va. 1989), *overruled on other grounds by Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794 (4th Cir. 1990). Plaintiffs contend that the facts of this case are similar to those in *Questech* in which the court concluded that the accidental death and dismemberment policy purchased by the employer for its key employees was an employee welfare benefit plan governed by ERISA.

Defendants, on the other hand, contend that the annual premium insurance payments by Defendants under the Bonus Agreement and the benefit of a lump sum payment to Sam Mozingo triggered by a single event do not satisfy the requirement in *Fort Halifax Packing Company, Inc. v. Coyne* that plans governed by ERISA involve continuing administration. Defs.' Br. 8 (citing and quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)). The court agrees with Defendants.

The third requirement of an ERISA plan consists of two elements: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees." *Meredith*, 980 F.2d at 355. In determining whether an employer "established or

**Memorandum Opinion and Order - Page 12**

maintained" an employee benefit plan, the court focuses on "the employer . . . and [its] involvement with the administration of the plan." *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991). An employer's purchase of insurance "is evidence of the establishment of a plan, fund, or program," and "the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 242 (5th Cir. 1990) (internal quotation marks omitted). Based on this reasoning, the court in *Memorial Hospital* found an employer's purchase of insurance for all of its employees was sufficient evidence of intent to establish and maintain an ERISA plan. *Id.*; *see also Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir. 1991) (similarly concluding that an employee benefit plan purchased by the employer for all of its employees was an ERISA plan).

If, however, "an employer does no more than purchase insurance for its employees and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan." *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008) (citing *Hansen*, 940 F.2d at 978). In *Hansen*, the Fifth Circuit reaffirmed its rule that the purchase of insurance alone is insufficient to demonstrate an ERISA plan, but held that other evidence in the case, "such as the employment of a benefits administrator and the issuance of a booklet regarding the plan endorsed by the employer, satisfied the burden of demonstrating the employer's intent to establish an ERISA plan." *Shearer*, 516 F.3d at 279 (citing *Hansen*, 940 F.2d at 978).

The requirements for the existence of an ERISA plan were further refined by the Supreme Court in *Fort Halifax Packing Company, Inc. v. Coyne*. In *Fort Halifax*, the Court held that for a particular plan to constitute an ERISA plan, it "must necessitate the existence of 'an ongoing

administrative program to meet the employer's obligation.'" *Cantrell v. Briggs & Veselka Co.*, 728 F.3d 444, 449 (5th Cir. 2013) (quoting *Fort Halifax Packing Co.*, 482 U.S. at 11). The Court concluded that an employer's one-time severance payment to employees was not an ERISA plan because: "The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12. The Court further reasoned that "[t]o do little more than write a check hardly constitutes the operation of a benefit plan." *Id.* In determining whether a particular plan requires an administrative scheme, the Court explained that the source of the funds is less important than whether benefits are being paid pursuant to a plan and administrative scheme for paying benefits. *Id.* at 18.

Following the reasoning in *Fort Halifax*, the Fifth Circuit in *Tinoco* concluded that an Early Retiree Health Care Plan ("ERHCP") was not governed by ERISA because there was no evidence that the ERHCP required "an administrative scheme to make ongoing discretionary decisions based on subjective criteria," and instead simply involved the payment of benefits under the plan based on a "one-time calculation using a fixed formula." *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 623 (5th Cir. 2002), *overruled in part on other grounds by ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013) (en banc). That the employer wrote a check each month did not affect the *Tinoco* court's conclusion that the ERHCP did not involve an administrative scheme. *Id.* at 623 ("[W]riting a check each month is hardly an administrative scheme.").

According to Bobst, the Bonus Agreement at issue was not offered to all of Trend Personnel's employees. Trend Personnel only purchased life insurance for Bobst and a handful of the company's key employees. Pursuant to the Bonus Agreement, Trend Personnel agreed to pay the annual premium on the policies, but it was not involved in the administration of the policies or

submission of claims; did not employ a benefits administrator; and did not issue a booklet or provide information to employees regarding the life insurance benefits offered by Penn Mutual. The facts of this case are, therefore, distinguishable from those discussed herein in which the Fifth Circuit has found an employer's intent to establish and maintain an ERISA plan.

The facts of this case are also distinguishable from the cases in which the Fifth Circuit has concluded that an ERISA plan existed because the plan required an ongoing administrative scheme. While the Bonus Agreement states in passing that Trend Personnel "will administer and hold all policies for the duration of employment," Pls.' Ex. 2, it does not require or reference any particular ongoing administrative scheme or procedures for the payment of benefits that would have been paid upon Sam Mozingo's death. *See Cantrell*, 728 F.3d at 451 (concluding that the deferred compensation arrangements in the plaintiffs' employment agreement contracts were not ERISA plans because the amount and duration of payments were fixed; the amount due did not depend on decisions made in underlying ERISA plans; and the deferred compensation agreements did not reference administrative procedures that had to be followed). The Bonus Agreement instead merely requires Trend Personnel to pay the $1,748 annual premium for the life insurance policy as required by Penn Mutual. Further, under the terms of the Bonus Agreement, any duty of Trend Personnel to administer and hold the life insurance policy ceased when Sam Mozingo left the company's employment. Pls.' Ex. 2 ("will administer and hold all policies *for the duration of employment*") (emphasis added).

Moreover, Defendants had no discretion under the Bonus Agreement to determine whether an employee was eligible for life insurance benefits. The Bonus Agreement states that Trend Personnel shall not be obligated to continue paying annual policy premiums after an employee's

**Memorandum Opinion and Order - Page 15**

employment was terminated. Trend Personnel's discontinuation of payments, however, was not discretionary because the Bonus Agreement expressly states that Trend Personnel's obligation to make payments ceases "regardless of the reason for such termination of employment." *Id.* The only discretion reserved by Trend Personnel under the Bonus Agreement pertained to its right to amend or terminate the Bonus Agreement. This limited discretion, even when combined with the vague statement in the Bonus Agreement that Trend Personnel "will administer and hold all policies for the duration of employment" and pay the $1,748 annual premium, does not amount to or necessitate an ongoing administrative scheme for the payment of benefits that required Defendants to make discretionary decisions based on subjective criteria.

Accordingly, for all of these reasons, the court determines that the Bonus Agreement fails to satisfy the third requirement for an ERISA plan. Because the Bonus Agreement does not satisfy all of the requirements for an ERISA plan, it does not qualify as an ERISA plan, and the court need not address whether the remaining criteria for ERISA plans are satisfied. *See Meredith*, 980 F.2d at 355. In reaching this conclusion, the court did not consider *Questech, Inc. v. Harford Accident and Indemnity Company*, 713 F. Supp. 956 (E.D. Va. 1989), cited by Plaintiffs. As explained during the bench trial of this case, the court is not bound by such authority and does not find it useful, particularly when there is Fifth Circuit or Supreme Court authority that is directly on point. Having determined that the Bonus Agreement is not governed by ERISA, Defendants are entitled to judgment on Plaintiffs' claim for breach of fiduciary duty under ERISA, which will be dismissed with prejudice.

### III. Conclusion

For the reasons stated, the court **finds** and **concludes** that Plaintiffs Sarah Mozingo Martin and Mary S. Mozingo are not entitled to recover on their breach of fiduciary duty and estoppel claims under ERISA against Defendants Trend Personnel Services and Dan W. Bobst. Accordingly, the court **dismisses with prejudice** these claims. The court will enter judgment in favor of Defendants Trend Personnel Services and Dan W. Bobst on Plaintiffs' claims in accordance with this memorandum opinion. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 23rd day of November, 2015.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge